<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEDRO CARDONA,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Civil Action No. 2:15-cv-6799-SDW<br><br><br>OPINION<br><br><br>August 18, 2016 |

**WIGENTON**, District Judge.

　　This matter comes before this Court on Plaintiff Pedro Cardona's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security (the "Commissioner"), with respect to Administrative Law Judge Dennis O'Leary's ("ALJ O'Leary") August 27, 2014 denial of Plaintiff's claim for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB") from January 1, 2005 until September 1, 2009 under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject-matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further proceedings.

I.      **PROCEDURAL HISTORY**

Plaintiff filed his initial claim for SSI and DIB on September 22, 2005.[1] (Tr. 112.)  The application was denied initially on January 17, 2006 and upon reconsideration on March 10, 2006. (Tr. 62, 78, 461-67.)  Plaintiff's subsequent request for a hearing before an administrative law judge was granted, (Tr. 75-77), and ALJ Donna A. Krappa ("ALJ Krappa") held a hearing on September 25, 2007. (Tr. 37.)  On December 27, 2007, ALJ Krappa issued a decision finding Plaintiff not disabled and denying his claim for SSI and DIB benefits.  (Tr. 48-57.)  Specifically, ALJ Krappa found that "[Plaintiff] had the following severe impairments: disorders of the back, an affective disorder and Hepatitis C." (Tr. 48.)  ALJ Krappa concluded that, given Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), jobs existed in significant numbers in the regional and national economy that Plaintiff could perform. (Tr. 48.)  Plaintiff then filed a timely appeal to the Appeals Council (Tr. 59), which vacated and remanded ALJ Krappa's decision on June 24, 2008.  (Tr. 59-61.)

On January 9, 2009, ALJ Krappa issued another decision, again finding Plaintiff not disabled and denying his claim for SSI and DIB. (Tr. 18-29.)  Specifically, ALJ Krappa found that "[Plaintiff] had the following severe impairments: diabetes with sensory neuropathy, a disorder of the back, hepatitis C, and hypertension," but Plaintiff's impairment or combination of impairments did not meet or equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 22-23.)  ALJ Krappa also reduced Plaintiff's RFC to sedentary, but ultimately determined that jobs existed in significant numbers in the regional and national economy that Plaintiff could perform. (Tr. 19.)

---

[1] Plaintiff filed a second application for SSI on May 28, 2010, and was found to be disabled from the date of such filing because Plaintiff met the requisites of Medical Listing 5.05(B)(1)(2)(a). (*See* Tr. 597.)

2

The Appeals Council subsequently affirmed ALJ Krappa's 2009 decision on November 24, 2010. (Tr. 8.) Plaintiff then appealed to the United States District Court for the District of New Jersey and on July 7, 20ll, U.S. District Judge Katharine S. Hayden issued a consent order reversing the Commissioner's decision and remanding Plaintiff's claims for further proceedings. *See Cardona v. Comm. Soc. Sec.*, No. 2:11-cv-0450-KSH.

On July 27, 2011, the Appeals Council again remanded Plaintiff's claim, vacating the Commissioner's final decision and ordering the Commissioner to assign the case to a different ALJ to determine whether Plaintiff had a severe mental impairment, and if so, to evaluate the impairment and provide a comprehensive RFC finding. (Tr. 608-09.)

ALJ Leonard Olarsch ("ALJ Olarsch") subsequently held a hearing regarding Plaintiff's claim on February 23, 2012. (Tr. 662-85.) On March, 20, 2012, ALJ Olarsch issued a decision finding Plaintiff to be disabled beginning September 1, 2009 (Tr. 597-98), but not disabled before September 1, 2009. (Tr. 596.) In his 2012 decision, ALJ Olarsch found that, as of September 1, 2009, Plaintiff's condition met or medically equaled Medical Listings 5.05 and 12.04. (Tr. 597.) ALJ Olarsch also found that "[Plaintiff] had the following severe impairments: diabetes with sensory neuropathy; obesity; a disorder of the back; hepatitis C; liver disease; post traumatic stress disorder; and a mood disorder." (Tr. 591.)

On June 29, 2012, after the Appeals Council denied Plaintiff's request for review of the 2012 decision, Plaintiff again appealed to the United States District Court for the District of New Jersey, alleging disability from January 1, 2005 until September 1, 2009. *See Cardona v. Comm. Soc. Sec.*, No. 2:12-cv-04026-JLL. On appeal, the Commissioner conceded that the 2012 decision lacked substantial supportive evidence and that the case should be remanded for further proceedings. (Tr. 792-93.) On June 20, 2013, U.S. District Judge Dennis M. Cavanaugh issued

an Opinion which reversed in part and remanded the 2012 decision for further proceedings. *See Cardona v. Comm. Soc. Sec.*, No. 2:12-cv-04026-JLL (Dkt. Nos. 12-13). Specifically, Judge Cavanaugh found that ALJ Olarsch's determination (at step three of the sequential analysis) that Plaintiff's conditions before September 1, 2009 did not meet the criteria for a medical listing, was not supported by substantial evidence. As a result, Judge Cavanaugh determined that additional testimony was needed to fully develop the administrative record and, therefore, remanded Plaintiff's claim with the following instructions:

> *Another medical expert* should review Plaintiff's medical records to determine whether Plaintiff merited a listing prior to September 1, 2009. In addition, if upon remand the ALJ does not find Plaintiff's status equal to a listing at step three, and the process reaches step five, a new VE must evaluate Plaintiff's file in light of the testimony by Dr. Clark, to determine Plaintiff's RFC prior to September 1, 2009.[2]

(Tr. 794 (emphasis added).) On August 11, 2013, the Appeals Council remanded Plaintiff's claim, vacating the Commissioner's final decision, and ordering the Commissioner to conduct further administrative proceedings. (Tr. 771-73.) In their Order, the Appeals Council directed the administrative law judge to "[f]urther evaluate the evidence from the medical expert, Dr. Clark, to clarify the date of onset and, *if warranted and available* obtain additional medical expert evidence to clarify the date of onset and whether the claimant met or equaled a listing (20 CFR 404.1527(e) and Social Security Ruling 83-20)." (Tr. 772 (emphasis added).)

On May 28, 2014, ALJ Dennis O'Leary held a hearing regarding Plaintiff's claim. (Tr. 818-47.) However, rather than procure testimony from *another* medical expert, as ordered by Judge Cavanaugh, ALJ O'Leary simply procured additional testimony from Dr. Martin Fechner,

---

[2] This Court notes that although Judge Cavanaugh's Opinion does direct the ALJ on remand to obtain testimony from "[a]nother medical expert," that detail was not included in the Opinion's "Conclusion." The Conclusion of that Opinion states "1) the ALJ is ordered to determine whether Plaintiff had a severe mental impairment prior to September 1, 2009 by reviewing Dr. Clark's testimony in conjunction with Plaintiff's medical records; and if evaluation moves to step five, is 2) ordered to evaluate Plaintiff's RFC; and 3) obtain new VE testimony." (Tr. 794.)

4

(Tr. 827), an expert who had previously testified as to Plaintiff's conditions at the October 23, 2008 hearing before ALJ Krappa. (Tr. 550.) In addition, ALJ O'Leary did procure updated testimony from a vocational expert regarding Plaintiff's ability to work during the relevant period.

On August 27, 2014, ALJ O'Leary issued a decision denying Plaintiff's claim for SSI and DIB. (Tr. 699-715.) In that decision, ALJ O'Leary found that "[f]rom January 1, 2005 until September 1, 2009, the [Plaintiff] had the following severe impairments: liver disease and PTSD/depression" as per 20 CFR 404.1520(c). (Tr. 702.) However, ALJ O'Leary also found that Plaintiff had the RFC to perform light work during the relevant period and, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Tr. 714-15.) The Appeals Council subsequently denied Plaintiff's request for review on July 16, 2015. (Tr. 686.) Plaintiff then filed the appeal of the Commissioner's final decision now before this Court on September 11, 2015. (Dkt. No 1.)

## II. FACTUAL HISTORY

### A. Personal and Employment History

Plaintiff was 39 years old at the time he filed his first application for SSI and DIB. (Tr. 124.) Plaintiff has a limited education and is able to communicate in English. (Tr. 783.) From 1989 to 2004, Plaintiff's job titles included: assembly, floor person, hi-low operator, packer, and superintendent/janitor (Tr. 128-29, 134.)

### B. Medical History

Plaintiff's SSI and DIB claim alleges disability beginning January 1, 2005, related to liver problems, diabetes, back pain, depression, post-traumatic stress disorder ("PTSD"), hypertension, and hepatitis C. (Tr. 127, 163-71, 180.) It appears from the administrative record that Plaintiff

was initially diagnosed with hepatitis C in approximately 1974. (Tr. 350.)  In addition, during the period at issue in this matter (January 1, 2005 to September 1, 2009) Plaintiff was repeatedly seen by doctors at the Raritan Bay Medical Center ("RBMC").  On April 14, 2005, a medical report noted that Plaintiff had been diagnosed with diabetes eight months earlier and that he was suffering from hypertension and depression.  (Tr. 207-08.)  Plaintiff also indicated to Dr. Sujata Subramanyam, M.D., that he had foot pain and made a statement reflecting potential self-harm. (Tr. 206.)  Medical records from RBMC dated August 31, 2005, note that Plaintiff suffered from diabetic neuropathy and hepatitis C.  (Tr. 244-47.)  Then, in September 2005, Plaintiff indicated that he had back pain that radiated to both legs and numbness of both feet.  (Tr. 238-41.)  Medical records dated November 4, 2005, from RBMC, showed hepatitis C with mildly elevated liver functioning.  (Tr. 236-37.)  The records also indicate that Plaintiff's care provider found that his extremities did not exhibit edema or cyanosis.  (Tr. 236.)

   On November 18, 2005, Dr. Celia G. Roque, M.D., noted that in addition to numerous other ailments, Plaintiff had a history of hepatitis C and Plaintiff's liver enzymes showed "some elevation."  (Tr. 210-13.)  Dr. Roque also noted that Plaintiff required financial assistance to purchase prescription medications to prevent further liver complications caused by hepatitis C. (*Id*.)  In addition, Dr. Roque found that the flexion of Plaintiff's lumbar spine elicited low back pain, and that Plaintiff was unable to tandem toe/heel walk.  (*Id*.)  Dr. Roque also noted that the motion in Plaintiff's upper and lower extremities were normal, his fine and gross manipulation abilities were normal, he had no focal deficits, his reflexes were normal, and his strength was "5/5."  (Tr. 212.)

   On November 22, 2005, Dr. Pradip Gupta, M.D., indicated that Plaintiff suffered from hepatitis C. (Tr. 232, 234, 241.)  Plaintiff also complained of depressive symptoms which he

reported began when his back pain began again.  (Tr. 232.)  In addition, medical records from December 14, 2005, indicate that Plaintiff had "persistent elevation of hepatic enzymes." (Tr. 284.)

Medical records dated February 1, 2007, from RBMC, again show that Plaintiff tested positive for hepatitis C. (Tr. 310.)  A liver ultrasound dated March 3, 2007, also showed "mild diffuse increased echogenicity of the liver, suspicious for fatty infiltration" and hepatic parenchymal disease, such as cirrhosis, was suspected. (Tr. 327.)  In addition, on September 17, 2008, RBMC notes indicated that Plaintiff "met the DSM IV criteria for a Posttraumatic Stress Disorder . . . , and a Personality Disorder Not Otherwise Specified . . . ." (Tr. 426.)

In addition to treatment records, Dr. Martin Fechner provided expert testimony at the October 23, 2008 hearing in front of ALJ Krappa. (Tr. 555.)  As part of his testimony, Dr. Fechner explained that he did not believe that Plaintiff's symptoms met or equaled the medical listings at any time. (Tr. 555.)  Dr. Fechner also testified that Plaintiff "could do a light activitiy, could walk or stand in aggregate of six hours in an eight-hour day, could sit up to six hours in an eight-hour day, could lift twenty pounds occasionally and ten pounds frequently." (Tr. 555.) In addition, Dr. Fechner provided what was essentially the same testimony at the May 28, 2014 hearing before ALJ O'Leary, but specified that his findings with regard to Plaintiff's conditions and RFC also applied to the period between January 1, 2005 and September 1, 2009.  (Tr. 830-31.)  Finally, at the February 23, 2012 hearing before ALJ Olarsch, Dr. Julian Clark, M.D. testified that Plaintiff suffered from PTSD and depressive disorder as of November 22, 2005.  (Tr. 668-70.)

### III.  LEGAL STANDARD

#### A.  Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the

7

ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the

8

plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the

claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other

SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## IV. DISCUSSION

In his appeal now before this Court, Plaintiff argues that ALJ O'Leary erred on a number of bases. (*See generally* Pl.'s Br. Supp.) Among those arguments, Plaintiff raises one he previously raised before Judge Cavanaugh on appeal in 2013: that the ALJ's finding that Plaintiff did not meet the criteria for a medical listing before September 1, 2009 was not supported by substantial evidence. (Tr. 793-94.) In light of that argument, Judge Cavanaugh reversed ALJ Olarsch's 2012 decision and directed that, on remand, the ALJ must have "[a]nother medical expert . . . review Plaintiff's medical records to determine whether Plaintiff merited a listing prior to September 1, 2009." (Tr. 794.)

On remand, ALJ O'Leary did procure additional expert testimony regarding Plaintiff's condition between January 1, 2005 and September 1, 2009. (Tr. 818-47.) However, ALJ O'Leary did not conform with Judge Cavanaugh's direction to have *another* medical expert review Plaintiff's records. Rather, ALJ O'Leary simply procured additional testimony from Dr. Martin Fechner, who had previously testified as to Plaintiff's conditions at the October 23, 2008 administrative hearing before ALJ Krappa. (Tr. 550.) By failing to follow Judge Cavanaugh's direction, ALJ O'Leary also failed to cure the deficiencies in the administrative record upon which Judge Cavanaugh reversed Judge Olarsch's previous decision. (Tr. 793-94.) Moreover, an agency's failure to adhere to a court's remand order in a subsequent administrative proceeding is legal error. *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand

order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review"); *see also Mefford v. Gardner*, 383 F.2d 748, 758-759 (6th Cir. 1967).[3]

In light of ALJ O'Leary's failure to comply with Judge Cavanaugh's Order, and the resultant continued need to supplement the administrative record, the Commissioner's final decision must be reversed and remanded for further proceedings. On remand, the ALJ must have a medical expert—one with no previous involvement in this matter— review Plaintiff's medical records to determine whether Plaintiff merited a listing prior to September 1, 2009. In addition, if the evaluation continues past step three, the ALJ should reevaluate Plaintiff's RFC and obtain new vocational expert testimony, in light of the evidence provided by the new medical expert.

## V.     CONCLUSION

For the reasons stated above, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further proceedings.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:     Parties

---

[3] ("On the remand of a case after appeal, it is the duty of the . . . the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions; and that after a cause has been determined on appeal, the court or agency from which the appeal is taken is without power to open or modify the judgment or order of the appellate court, or to alter or relieve from the precise fulfillment of a specified condition on which the effect of the appellate judgment is made to depend.")